IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALLSTATE INSURANCE COMPANY,

       Plaintiff,

           v.

TANYA ROTE,

       Defendant.

No. 3:16-cv-01432-HZ

OPINION & ORDER

Brian C. Hickman
Gordon & Polscer, LLC
9755 SW Barnes Road, Suite 650
Portland, OR 97225

J. Scott Humphrey
Marcus L. Mintz
Seyfarth Shaw LLP
131 S. Dearborn Street, Suite 2400
Chicago, IL 60603

      Attorneys for Plaintiff

Tanya Rote
24790 SW Big Fir Road
West Linn, OR 97225

      Defendant Pro Se

HERNÁNDEZ, District Judge:

      Plaintiff Allstate Insurance Company ("Allstate") alleges that Defendant Tanya Rote

("Rote") breached the parties' non-compete agreement and misappropriated trade secrets from

Allstate by failing to comply with the terms of the agreement when her term as an Exclusive

Allstate Agent ("Exclusive Agent") ended. Allstate asks this Court to enter an injunction that

enjoins Rote from soliciting insurance products competitive to those sold by Allstate from within

one mile of her former Allstate sales location, enjoins Rote from using Allstate's confidential

information and trade secrets, and compels Rote to account for and return all Allstate

confidential information and trade secrets in her custody, possession, or control. After reviewing

the parties' written submissions and conducting oral argument on July 29, 2016, the Court grants

Allstate's motion in part and enters a modified preliminary injunction.

## BACKGROUND

      Rote was an Exclusive Agent for Allstate from March 1, 2015 until February 29, 2016.

Shell Decl. ¶¶ 15, 25, ECF 6. As an Exclusive Agent, Rote opened an Allstate insurance agency

and sold Allstate insurance products and services. Id. at ¶ 25. Rote was provided with and had

access to Allstate confidential information, including Allstate customers' contact information,

the type and value of polices carried by those customers, and the location and description of

assets insured through Allstate. Id. at  ¶¶ 12, 21.

      The parties' contractual relationship was memorialized in the Allstate R3001C Exclusive

Agency Agreement signed by the parties on March 1, 2015. Shell Decl. Ex. A ("Agreement"),

ECF 6-1. The Agreement details the rights and responsibilities of Allstate, which is named

"Company"; Rote, who is named as "Key Person"; and Tanya Rote Insurance, Inc. ("TRII"),

which is named as "Agency." Id. at 2-3. The Agreement provides that Rote's Allstate Agency

sales location ("Agency location") is 7427 SW Coho Ct., Suite 200, Tualatin, Oregon, 97062. Id.

at 5.

      The Agreement contains several provisions that apply in the event of the termination of

the Agreement. For example, upon termination of the Agreement, Agency must "immediately

return all property belonging to the Company, or dispose of it in such manner as the Company

specifies." Id. at 10. In addition, for a period of one year following termination, Agency and Key

Person agree as follows:

> [N]either Agency, nor . . . Key Person . . . will solicit the purchase of products or services
> in competition with those sold by the Company:
>
>   1.  With respect to any person, company or organization to whom Agency or anyone
>      acting on its behalf sold insurance or other products or services on behalf of the
>      Company and who is a customer of the Company at the time of termination of the
>      Agreement;
>
>   2.  With respect to any person, company, or organization who is a customer of the
>      Company at the time of termination of this Agreement and whose identity was
>      discovered as a result of Agency's status as a Company agent or as a result of
>      Agency's access to confidential information of the Company; or
>
>   3.  From any office or business site located within one mile of the agency sales
>      location . . . at the time this Agreement is terminated.

Id.

      In the event of a breach of the Agreement, Agency agrees that Company "will be

immediately entitled to an order granting injunctive relief from any court of competent

jurisdiction against any act which would violate any provision, without the necessity of posting a

bond, and Agency waives any defense to an application for such order, except that the violation did not occur." Id. at 11.

The Agreement contains Appendix A, the "Confidentiality and Non Competition Agreement—Key Person, (the "Non-Compete Agreement"). Id. at 14. The Non-Compete Agreement is entered into by Rote, the "Service Provider"; TRII as Agency; and Allstate as Company. Id. The Non-Compete Agreement contains the same basic restrictions stated above on Rote's ability to compete with Allstate in the event of the termination of the Agreement. Id. at 15. The Non-Compete Agreement was also signed March 1, 2015. Id.

After selling the economic interest in her Allstate book of business to another Exclusive Agent, Rote's relationship with Allstate terminated effective February 29, 2016. Shell Decl. ¶ 26, ECF 6. However, Rote failed to comply with various provisions of the Agreement. Specifically, she has continued to sell products that compete with Allstate from her former Agency sales location. Id. at ¶ 29. In addition, Rote kept Allstate confidential information, including customer names, addresses, and telephone numbers. Id. at ¶ 33.

## STANDARDS

A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). The plaintiff "must establish that irreparable harm is likely, not just possible[.]" Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011) (emphasis in original). The court may apply a sliding scale test, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." Id.

Nevertheless, the party requesting a preliminary injunction must carry its burden of persuasion by a "clear showing" of the four required elements set forth above. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam); Lopez v. Brewer, 680 F.3d 1068, 1072 (9th Cir. 2012) (a "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion") (quoting Mazurek, 520 U.S. at 972) (emphasis in original).

## DISCUSSION

The Court grants Allstate's Motion for Preliminary Injunction in part. Allstate establishes a likelihood of success on the merits and a likelihood of irreparable harm in the absence of preliminary relief as to both Rote's failure to return confidential information and failure to comply with the restriction on selling competing products from her Agency location. In addition, the Court finds that the balance of the equities and the public interest tips in Allstate's favor as to the confidential information issue. However, the Court finds that the balance of the equities tips in Rote's favor on the issue of her continuing to work from her prior Agency location and, accordingly, enters a modified injunction regarding that issue.

## I.    Likelihood of success on the merits

Allstate brings claims of breach of contract and trade secret misappropriation. Rote is indisputably in breach of the Agreement and in possession of Allstate confidential information. Nevertheless, she contends that Allstate cannot establish a likelihood of success on the merits.

To state a claim for breach of contract under Oregon law, a "plaintiff must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff." Slover v. Or. State Bd. Of Clinical Soc. Workers, 144 Or. App. 565, 570–71, 927 P.2d 1098 (citation and internal quotation marks

omitted); see also Ying Chang v. Citimortgage, Inc., No. 3:12-CV-01884-HU, 2013 WL 5939985, at *12 (D. Or. Nov. 2, 2013).

As to Allstate's trade secret misappropriation claims, "[c]ustomer information such as sales history and customer needs and preferences constitute trade secrets." Henry Schein, Inc. v. Cook, No. 16-CV-03166-JST, 2016 WL 3212457, at *3 (N.D. Cal. June 10, 2016) (analyzing an application for a TRO under the Defend Trade Secret Act and citing MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 521 (9th Cir. 1993)). See also Or. Rev. Stat. § (O.R.S.) 646.461 (expressly defining "trade secret" to include a "customer list"). Both the Defend Trade Secret Act of 2016 ("DTSA") and the Oregon Uniform Trade Secrets Act ("OUTSA") provide for the issuance of injunctions to maintain the sanctity of trade secrets. 18 U.S.C.A. § 1836 ("In a civil action brought under this subsection with respect to the misappropriation of a trade secret, a court may . . . grant an injunction[.]"); O.R.S. 646.463 ("Actual or threatened misappropriation may be temporarily, preliminarily or permanently enjoined.").

The existence of the Agreement and its relevant terms are undisputed. The Agreement clearly provides that Rote may not solicit the purchase of products or services in competition with those sold by Allstate from her Agency location and Rote may not retain Allstate confidential information after termination of the Agreement.

Rote admits that she is "running a competing agency in the exact same place that TRII use[d] to operate its Allstate Agency" and that Rote has retained Allstate confidential information. Rote Opp. 4, 9; ECF 20. She states that "[t]he Confidential Information retained was limited to names, addresses, telephone numbers, email[] addresses, commission and gross premium amounts by policy. Claims history and other private information was not retained. Emails and other correspondence to be used as evidence in the prosecution of my claims were

also retained." Rote Decl. ¶¶ 10-11, ECF 21. Rote also admits that six Allstate family insurance policies were cancelled and new policies were issued from Rote's new agency. Rote Opp. at 7. Therefore, she concedes that she has continued to solicit the purchase of products or services in competition with those sold by Allstate from her Agency location, she has issued at least six policies from her Agency location from a competitor agency, and she has retained Allstate confidential information.

Despite these seemingly dispositive concessions, Rote does not concede that she breached the Agreement. She argues that she is justified in retaining the confidential information because TRII and Rote are in a financial dispute with Allstate, and Rote has asserted counterclaims that "will require Allstate to produce the very documents the retention of which Allstate claim[s] constitutes a breach." Id. at 9.[1] She also contends that she must retain some information in order to comply with the Non-Compete Agreement. As to her office location, she argues that she is entitled to operate a competing agency out of her Agency location because the Non-Compete Agreement's restrictions are unreasonable. Rote's arguments fail.

Rote may not retain confidential information, in violation of the Agreement, because she wishes to use it in litigation. The Agreement clearly requires her, upon termination, to return all confidential information to Allstate. Non-Compete Agreement ¶ 5. Further, the Agreement states that Rote waives any defense to Allstate's application for an order granting injunctive relief "except that the violation did not occur." Agreement at 15, ¶ 10. Therefore, even if Allstate

---

[1] Rote submits a declaration, stating:

> Confidential policy information has been kept for a number of reasons. First, in order to ensure that my marketing campaigns do not solicit Allstate Customers, . . the information was retained. Second, in order to preserve from destruction the material necessary to prosecute my claims and the claims of TRII against Allstate Insurance Company, Hall or Jennings, the information was retained. Third[,] the commission statements are the primary source documents supporting TRII's gross revenue from Allstate.

Rote Decl. ¶ 8.

breached the Agreement as well, that is not a defense to Allstate's motion for a preliminary

injunction. Rote does not contend that a "violation [of the Agreement] did not occur."

Rote also may not retain confidential information in order to comply with the Non-

Compete Agreement. The Non-Compete agreement defines "confidential information" as

follows:

> Confidential information includes, but is not limited to, business plans of the Company;
> information regarding the names, addresses, and ages of policyholder or prospective
> policyholders of the Company; types of policies; amounts of insurance; premium
> amounts; the description and location of insured property; the expiration or renewal dates
> of policies; policyholder listings and any policyholder information subject to any privacy
> law; claim information; certain information and material identified by the Company as
> confidential or information considered a trade secret as provided herein or by law; and
> any information concerning any matters affecting or relating to the pursuits of the
> Company that is not otherwise lawfully available to the public. Confidential information
> may be oral or recorded on paper, electronic data file, or any other medium.

Agreement at 14, ¶ 3. Paragraph 7 of the Non-Compete Agreement states that Rote will not

solicit business from Allstate's customers. Rote argues that it is impossible for her to comply

with her obligation not to solicit Allstate's customers without retaining their name and address,

because she needs such identifying information in order to avoid soliciting them. As Allstate

noted at oral argument, this is an issue that arises every time an Exclusive Agent terminates his

or her agreement with Allstate. The solution is for Rote to work with Allstate to ensure that she

is not soliciting customers in violation of the EA agreement, not to simply refuse to return

confidential information to Allstate.

As to the reasonableness of the Non-Compete Agreement restrictions, under Oregon law,

a non-compete agreement must meet three requirements in order to be enforceable: "(1) it must

be partial or restricted in its operation in respect either to time or place; (2) it must be on some

good consideration; and (3) it must be reasonable, that is, it should afford only a fair protection

to the interests of the party in whose favor it is made, and must not be so large in its operation as

to interfere with the interests of the public." <u>Nike, Inc. v. McCarthy</u>, 379 F.3d 576, 584–85 (9th Cir. 2004) (citing <u>Eldridge v. Johnston</u>, 195 Or. 379, 245 P.2d 239, 250 (1952)). "To satisfy the reasonableness requirement, the employer must show as a predicate that it has a legitimate interest entitled to protection. <u>Id.</u> (quotations and citations omitted).

The Non-Compete Agreement restricts solicitation for a period of one year and from within a mile of the location from which Rote sold Allstate insurance during the year immediately preceding the termination. Therefore, it meets the first requirement under Oregon law. <u>See, e.g.</u>, <u>Actuant Corp. v. Huffman</u>, No. CV-04-998-HU, 2005 WL 396610, at *5 (D. Or. Feb. 18, 2005) (finding a one-year non-compete a reasonable duration and collecting cases). As to the second requirement, the Non-Compete Agreement is supported by the consideration of Rote's appointment as an Exclusive Agent. Finally, the Non-Compete Agreement meets the third requirement because it protects Allstate's legitimate business interests of its customer relationships and confidential information. <u>See, e.g.</u>, <u>Cascade Exch., Inc. v. Reed</u>, 278 Or. 749, 751, 565 P.2d 1095, 1096 (1977) (enforcing two year non-compete on employees who had access to plaintiff's "customer lists" and specialized information relating to customers).

Rote also argues that "the office location restriction is not credible." Rote Opp. 12. The essence of her argument is that her Agency location no longer contains any signage or identifying features connecting it to Allstate, she does not receive "walk-in traffic" at the location, it would be unfair to make her break her multi-year lease at the Agency office location, and most of the insurance policies under TRII were not within one mile of the Agency office location. None of these arguments are convincing as to the merits of Allstate's claims. The plain language of the Agreement restricts Rote from competing with Allstate from any location within one mile of the Agency office location. Here, she is competing from the exact same office she

used when she was an Allstate Exclusive Agent. Accordingly, she is in breach of the Agreement. However, as discussed below, such considerations are relevant as this Court considers the balance of the equities.

Finally, Rote argues that, with the exception of six family insurance policy customers, she has not solicited any Allstate customers protected by the Agreement. Even assuming this is true, it is irrelevant. The Agreement prevents Rote from "soliciting the purchase of products or services in competition with those sold by [Allstate]" within one mile of her Agency location. Agreement at 10. It is undisputed that she is currently doing exactly what the Agreement forbids.

## II.    Irreparable harm

The Ninth Circuit recently reiterated that "[a]n enforceable noncompete agreement affords fair protection to a legitimate interest of the former employer," and, thus, a breach of the agreement causes harm. Ocean Beauty Seafoods, LLC v. Pac. Seafood Grp. Acquisition Co., No. 15-35608, 2016 WL 1554942, at *2 (9th Cir. Apr. 18, 2016). "Because the harm is intangible and difficult to quantify, it qualifies as irreparable." Id. (citing Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991)); see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm.").

In a factually similar case, Allstate Insurance Company v. Ali Shah, the District Court for the Northern District of Georgia found that Allstate would suffer irreparable harm if Shah was not prevented from violating a non-compete agreement because:

> [P]otential customers seeking to do business with Allstate may visit the location or call the number and find Defendant's business instead. They may choose to do business with Defendant, in which case Allstate loses a potential customer, or they may decide not to

do business with Defendant but be dissuaded from attempting to contact Allstate, in which case Allstate still loses a customer.

Shell Decl. Ex. F, Allstate Insurance Company v. Ali Shah, 1:16-CV-997-SCJ (N.D. Ga., May 20, 2016), ECF 6-6. The Court explained that Allstate's inability to show evidence of any specific instance of losing business due to Shah's violation of the non-complete clause was not dispositive, because the loss alleged by Allstate was inherently difficult to determine or quantify. Id. at 8. Furthermore, if Shah were allowed to operate a competing business in his same previous location, Allstate would lose its investment in goodwill. Id.

Rote argues that Allstate's likelihood of irreparable harm is merely speculative, citing an inapposite trademark infringement case in support. Rote Opp. 15 (citing Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc., 736 F.3d 1239, 1249 (9th Cir. 2013)). For the reasons explained in Ocean Beauty Seafoods and Shah, Rote's argument fails because Allstate is able to show a likelihood of irreparable harm, even if it is difficult to quantify.

## III.    Balance of the equities and public interest

Allstate's likelihood of success on the merits and irreparable harm tips the balance of equities in its favor as to its demand that Rote return all confidential information. See, e.g., Ocean Beauty Seafoods, 2016 WL 1554942, at *2. Allstate is requesting that Rote comply with the terms of a contract to which she agreed and which governed the parties' business relationship. There are no concerns of equity that weigh in favor of Rote being allowed to retain such information. If she is indeed entitled to confidential information because of her counterclaims, then she will receive that information in the course of discovery. Furthermore, given that the Non-Compete Agreement is likely reasonable, "an injunction enforcing it is not antithetical to any public interest." See id.

However, the Court views Allstate's demand that Rote cease operating out of her former Agency location differently. The controlling consideration is the harm that Allstate would suffer from the erroneous denial of a preliminary injunction compared to the harm Rote would suffer from the erroneous grant of such relief. See Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1137–38 (9th Cir. 2011); Scotts Co. v. United Indus. Corp., 315 F.3d 264, 284 (4th Cir. 2002) ("Thus, while cases frequently speak in the short-hand of considering the harm to the plaintiff if the injunction is denied and the harm to the defendant if the injunction is granted, the real issue in this regard is the degree of harm that will be suffered by the plaintiff or the defendant if the injunction is improperly granted or denied.").

While the Court acknowledges that Rote's operation may cause Allstate some amount of irreparable harm, the Court also recognizes several other factors that weigh in Rote's favor on the issue of equity. Most importantly, Rote explained to the Court at oral argument the ways in which she would be harmed if she were forced to cease operating out of her current sales location. Rote signed a five-year lease on the office location and she pays $3,000 per month in rent. If she were enjoined from operating from her former Agency location, she would still have to pay this amount in rent and she would need to find a new office space. If the injunction were improperly granted, this would clearly damage Rote, her finances, and her ability to run a successful business.

In addition, the Court is not convinced that the balance of equities weighs in Allstate's favor because there is no evidence that Rote has taken any business from Allstate by operating from her former Agency location. First, she only operated an Allstate business from that location for one year, so the amount of goodwill and name recognition that was established connecting Allstate to that location is necessarily limited. Second, Allstate submits a photo of Rote's sales

location which demonstrates that Rote has a sign hanging over the front door of the office that identifies the location as a Farmer's Insurance Agency. Supp. Shell Decl. ¶ 8, Ex. 1 , ECF 34, 34-1. The sign says "Farmer's Insurance" on one side and "Rote Agency" on the other side. Id. However, Rote declares that she receives "no walk in traffic" to her office. Rote Decl. ¶ 17, ECF 29. She also represented at oral argument that her office is located in a place that is not easily visible to members of the public who are simply driving in the area. Shannon Jennings, another Allstate EA who purchased Rote's Allstate book of customers from Rote, declares that "[l]ike Rote's Tualatin location, we get little to no walk in traffic to purchase new policies. Our sales and service activities are done by phone and email. Customers no longer come in to sign policies anymore. It's all done digitally." Jennings Decl. ¶ 11, ECF 31-3. Both Rote and Jennings confirm that TRII's former phone number was transferred to Jennings' office. Id. at ¶ 9.

In Shah, which Allstate contends this Court should follow, the Court found that customers knew the location and telephone number used by Shah for his own business, to have been affiliated with Allstate. "Thus potential customers seeking to do business with Allstate may visit the location or call the number and find Defendant's business instead." Shah, 1:16-CV-997-SCJ. Here, there is no evidence that customers visit Rote's location or associate it with Allstate and there is evidence that Rote transferred her phone number and email to Jennings, an Allstate agent.

The Court finds that, based on the evidence presented to it thus far, Allstate will likely suffer only modest harm if Rote is allowed to operate from her former Allstate sales location, assuming of course that she does not solicit any Allstate customers using the confidential information she misappropriated. But, if a preliminary injunction as to this issue is erroneously granted, Rote will suffer severe financial loss and ability to sustain her profession. This is

enough to demonstrate that the balance of equities tips in Rote's favor.[2] See also Philip Morris Inc. v. Cigarettes For Less, 215 F.3d 1333 (9th Cir. 2000) (affirming district court's consideration of the relative size and economic status between the parties in balancing the parties' relative hardships).

## IV.    Terms of the injunction

As discussed above, the Court grants Allstate's injunction to the extent it requires Rote to immediately return all confidential information to Allstate and refrain from using or disclosing such information. As to the restriction on Rote's ability to operate a competing business from her former Agency location, the Court does not enjoin Rote at this time. However, the Court reminds Rote that this ruling does not impact Allstate's ability to pursue damages for any breach of contract that results from Rote continuing to operate at this location. In addition, while the Court declines to grant Allstate its full injunctive relief, the Court does conclude that Rote must remove the Farmer's Insurance signage from the outside of her building. To the extent Allstate argues that it will suffer harm because members of the public can currently see a competing insurance agency at the former Allstate location, the Court believes its order will remedy that potential harm. And, because Rote contends that she does not receive any "walk-in" business anyway, the Court finds this to be an equitable solution that will not harm Rote.

### CONCLUSION

The Court enters a preliminary injunction, under the following terms:

1.    Allstate is not required to post a bond or any other security in support of this Order;

2.    Rote is hereby ordered to return all Allstate information and property in her custody, possession or control within (7) days to Allstate, including the following:

---

[2] As to the public interest, for the same reasons as above, it weighs in favor of Allstate on this issue.

business plans of Allstate; information regarding the names, addresses, and ages of policyholders; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; certain information and material identified by Allstate as confidential or information considered a trade secret as provided herein or by law; and any information concerning any matters affecting or relating to the pursuits of Allstate that is not otherwise lawfully available to the public.

3.  Rote, and any and all persons in active concert with her, are hereby enjoined from using any Allstate confidential information, including, but not limited to, any lists or other forms of data reflecting, referring, and/or relating to Allstate customers;

4.  Rote, and any and all persons in active concert with her, are hereby enjoined from using any Allstate confidential information for their own benefit and from disclosing Allstate confidential information to anyone not authorized to receive the information; and

5.  Rote, and any and all persons in active concert with her, are hereby ordered to remove any visible signage and/or advertising from the outside of Rote's office location at 7427 SW Coho Court, Tualatin, Oregon, 97062.

IT IS SO ORDERED.

Dated this _____ day of _____, 2016.

MARCO A. HERNÁNDEZ
United States District Judge

15 – OPINION & ORDER